UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

THOMAS W.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

**DECISION AND ORDER**

1:24-CV-00792 EAW

## INTRODUCTION

Represented by counsel, Plaintiff Thomas W. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 8; Dkt. 11), and Plaintiff's reply (Dkt. 12). For the reasons discussed below, the Commissioner's motion for judgment on the pleadings (Dkt. 11) is granted, and Plaintiff's motion (Dkt. 8) is denied.

## BACKGROUND

Plaintiff protectively filed his application for DIB on February 28, 2018. (Dkt. 3 at 79).[1] In his application, Plaintiff alleged disability beginning November 1, 2013, due to depression, suicidal thoughts, anxiety, and panic attacks. (*Id.* at 70-71). Plaintiff's application was initially denied on April 12, 2018. (*Id.* at 82-93). A hearing was held before administrative law judge ("ALJ") Asad Ba-Yunus on August 21, 2019. (*Id.* at 30-69). On September 17, 2019, the ALJ issued an unfavorable decision. (*Id.* at 14-25). Plaintiff requested Appeals Council review; his request was denied on September 8, 2020. (*Id.* at 6-11).

Thereafter, Plaintiff appealed the Commissioner's decision to the United States District Court for the Western District of New York, and by Decision and Order dated September 12, 2022, the case was remanded for further administrative proceedings. (Dkt. 4 at 147-51). The ALJ held a telephone hearing on March 21, 2024. (*Id.* at 54-86). The ALJ issued an unfavorable decision on April 29, 2024. (*Id.* at 34-48). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

*v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2018. (Dkt. 4 at 39). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity from the alleged onset date of November 1, 2013, through the date last insured of December 31, 2018. (*Id.* at 40).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of depression disorder and anxiety disorder. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). The ALJ particularly considered the criteria of Listings 12.04 and 12.06 in reaching his conclusion. (*Id.* at 40-41).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> He may perform unskilled, simple tasks, may have occasional interaction with supervisors, but only brief/superficial interaction with coworkers and the general public, may not work in coordination or in tandem with coworkers, and can tolerate occasional changes to a routine work setting.

(*Id.* at 42). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 46).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of mail clerk, cleaner II, and router. (*Id.* at 47). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act from November 1, 2013, the alleged onset date, through December 31, 2018, the date last insured. (*Id.* at 47-48).

## II. **<u>The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error.</u>**

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that the ALJ improperly over-emphasized Plaintiff's noncompliance with treatment in evaluating the credibility of Plaintiff's subjective complaints and the disabling opinion evidence. (Dkt. 8-1 at 1, 14-18). In response, the Commissioner argues that substantial evidence supports the ALJ's RFC finding, and the ALJ reasonably considered that Plaintiff's repeated and documented noncompliance with medications and appointments undermined his allegations of symptoms so intense to be totally work-preclusive. (Dkt. 11-1 at 12-21). The Court has considered Plaintiff's argument and, for the reasons discussed below, finds it to be without merit.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). While an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," *id.*, an ALJ is not a medical professional, and therefore she "is not qualified to assess a

claimant's RFC on the basis of bare medical findings," *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation and citation omitted).

However, at bottom, "[a]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (finding it was proper for the ALJ "pursuant to his statutory authority . . . [to] consider[ ] the medical and other evidence in the record in its totality to reach an RFC determination"); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where . . . the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." (quotations, citations, and alteration omitted)). In arriving at the RFC, the ALJ's reasoning "must always be sufficiently discernible as to allow a reviewing court to ensure that the ALJ employed the proper standards and rendered a decision supported by substantial evidence." *Gail F. v. Comm'r of Soc. Sec.*, No. 21-CV-120-FPG, 2022 WL 17578465, at *4 (W.D.N.Y. Dec. 12, 2022) (quotations and citation omitted).

Plaintiff does not argue or identify any evidence supporting that an RFC with greater restrictions is required. Rather, Plaintiff takes issue with the ALJ's consideration of his noncompliance with treatment and medications, which was well-documented throughout the medical record. An ALJ is permitted to consider a claimant's noncompliance with treatment as a factor weighing against the claimant's credibility. *Weed Covey v. Colvin*, 96 F. Supp. 3d 14, 33 (W.D.N.Y. 2015); *see also Rebecca J. v. Bisignano*, No. 3:24-CV-01818 (MEG), 2025 WL 2119595, at *4 (D. Conn. July 29, 2025) (a claimant's complaints

may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as proscribed, and "[n]oncompliance with treatment is a permissible consideration for the ALJ in determining whether Plaintiff's symptoms were as debilitating as she alleged" (quotations and citations omitted)); *see also* SSR 16-3p, 2017 WL 5180304 at *9 ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.").

In cases where a plaintiff has mental impairments, courts are cautioned against placing too much emphasis on the absence of mental health treatment to discredit a claimant's limitations. *Michael E. v. Comm'r of Soc. Sec.*, No. 20-CV-6754S, 2022 WL 3714353, at *4 (W.D.N.Y. Aug. 29, 2022) ("faulting a person with diagnosed mental illnesses . . . for failing to pursue mental health treatment is a questionable practice") (quoting *Simpson v. Colvin*, No. 6:15-CV-06244 EAW, 2016 WL 4491628, at *15 (W.D.N.Y. Aug. 25, 2016) (citations omitted)). Accordingly, "an ALJ must not draw an adverse inference from a claimant's failure to seek or pursue treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." *McDowell v. Colvin*, No. 11-CV-1132(NAM/VEB), 2013 WL 1337152, at *13 (N.D.N.Y. Mar. 11, 2013) (quotation omitted). However, "the fact that

the ALJ did not explicitly reference Plaintiff's alleged mental impairments as a cause for noncompliance does not mean that it was not considered." *Weed Covey*, 96 F. Supp. 3d at 33.

Plaintiff's contention, which seems to be that the ALJ is categorically precluded from considering noncompliance with medications or treatment when a claimant is assessed with a mental health impairment, is not correct. Here, the ALJ appropriately noted Plaintiff's noncompliance with treatment and medications when assessing the credibility of his subjective complaints. (*See, e.g.*, Dkt. 4 at 43 (Plaintiff's allegations regarding the intensity, persistence, and limiting effects of his symptoms were inconsistent with evidence in the record, including his history of medical noncompliance); *see also id*. (mental status examinations demonstrated fair to good concentration and intact memory, and even giving Plaintiff deference, his treatment records demonstrate that Plaintiff took Paxil intermittently even when he reported experiencing relief, and Plaintiff denied experiencing side effects); *id*. (Plaintiff stopped using Paxil to try sertraline, which Plaintiff reported worked better, but thereafter, Plaintiff stopped sertraline to try Effexor, which he stated was not effective); *id*. at 44 (treatment records revealed that Plaintiff did not see his therapist for several months and was a no-show for other appointments); *id*. at 45 (even when Plaintiff was noncompliant and reported increased symptoms, the record also revealed that he was working as a house painter)). The ALJ further noted at the March 2024 administrative hearing that Plaintiff reported that he was taking medication to help his symptoms, but at the time the medication needed adjustment and Plaintiff felt it was not working as it should, and that certain medications were effective for only a couple of

weeks. (Dkt. 4 at 67, 73). Based on these discussions, it is clear from the record that the ALJ considered reasons for Plaintiff's noncompliance, including whether Plaintiff was experiencing side effects from his medications, Plaintiff's desire to try different mental health treatment drugs, and whether Plaintiff experienced improvement based on his treatment regimen. Plaintiff's argument suggests that his mental impairments caused his noncompliance with treatment and medications, but Plaintiff fails to cite any evidence supporting this claim.

Significantly, Plaintiff's noncompliance with his treatment regimen was not the only reason the ALJ concluded that Plaintiff could work. To that end, the ALJ noted that, even giving Plaintiff the benefit of the doubt and considering periods during which Plaintiff was not compliant with his medications, Plaintiff was still able to work with the limitations included in the RFC. *See id.* at 43 (even when considering Plaintiff's history of avoidant/isolated traits, "the undersigned is not persuaded that the claimant's allegations regarding the intensity, persistence, and limiting effects of his symptoms, are entirely consistent with the record or support disabling symptomology"); *id.* at 44 (even when considering period of medical noncompliance, "mental health status examinations still revealed fair concentration and memory within defined limits"); *id.* at 45 (even considering the medication noncompliance and allegations of increased symptoms thereafter, Plaintiff performed work as a house painter)).

The RFC—which requires Plaintiff to perform simple, unskilled work with limited contact with others, no work in coordination or in tandem with coworkers, and only occasional changes to a routine work setting, is consistent with the medical evidence in the

record. As noted above, Plaintiff's mental status examinations were largely normal, except for some impairments in the areas of concentration, interacting with others, and adaptation. (*Id*. at 43; *see also id*. (in June 2013, while Plaintiff presented as anxious, he had intact recent and remote memory skills, good attention, insight, and judgment, and was cooperative during examinations); *id*. (mental status examinations during the relevant period showed that Plaintiff exhibited fair to good concentration and intact memory); *id*. at 44 (mental health status examinations revealed fair concentration and memory within defined limits); *id*. (discussing mental health examination from 2018, which revealed that Plaintiff was cooperative, could relate well, had an "okay mood," with linear and logical thought processes, and good insight and judgment, with no paranoia or delusions present)). Plaintiff's impairments in the areas of concentration, interacting with others, and adaptation, are plainly accommodated by the RFC, which limits him to unskilled work, limited interactions with others, and only occasional changes.

The RFC is likewise supported by medical opinion evidence in the record, including the opinion offered by Dr. Bruni, who assessed moderate limitations in the following areas: carrying out detailed instructions; maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; working in coordination with or in proximity to others without being distracted by them; interacting appropriately with the general public; and accepting instructions and responding appropriately to criticism from supervisors. (Dkt. 3 at 75-76; *see also* Dkt. 4 at 46). These limitations are consistent with an RFC for unskilled, simple work, limited interaction with others, occasional changes to a routine

work setting, and no work in coordination or tandem with coworkers. *See, e.g., Tashona R. D. v. Comm'r of Soc. Sec.*, No. 5:23-CV-00583 (AMN/CFH), 2024 WL 4442722, at *5 (N.D.N.Y. Aug. 12, 2024) ("[T]he Second Circuit has repeatedly held that 'moderate' limitations do not preclude an individual's ability to work." (quotation and citation omitted)); *see also Landers v. Colvin*, No. 14-CV-1090S, 2016 WL 1211283, at *4 (W.D.N.Y. Mar. 29, 2016) ("The determination that Plaintiff is limited to 'simple, repetitive, and routine tasks' accounts for Plaintiff's limitations as to maintaining attention and concentration, performing activities within a schedule, and maintaining regular attendance."); *Reilly v. Colvin*, No. 1:13-cv-00785 (MAT), 2015 WL 6674955, at *3 (W.D.N.Y. Nov. 2, 2015) ("[G]enerally a limitation to only 'occasional' or 'limited' contact with others has been found sufficient to account for moderate limitations in social functioning.").

In sum, the Court does not find that the ALJ's consideration of Plaintiff's noncompliance with treatment and medication, along with other factors, was error, and the RFC is supported by substantial evidence in the record. Accordingly, remand is not required on this basis.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 11) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 8) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 24, 2026
Rochester, New York